IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-166-BO

REX LASASSO                          )
                    Plaintiff,       )
                                     )
v.                                   )                    O R D E R
                                     )
FEDEX EXPRESS a/k/a FEDERAL          )
EXPRESS CORPORATION,                 )
                    Defendant.       )


        This matter is before the Court on defendant's motion for summary judgment in its favor

on all claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has

responded, defendant has replied, and the matter is ripe for ruling. A hearing was also held on

the motion before the undersigned on February 2, 2017, at Raleigh, North Carolina. For the

reasons that follow, defendant's motion is granted in part and denied in part.

                                      BACKGROUND

        Plaintiff filed this action in Wake County Superior Court alleging claims arising under

the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, and the ADA Amendments Act

(ADAAA), Pub. L. No. 110-325; the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201; the

North Carolina Wage and Hour Act (NCWHA), N.C. Gen. Stat. § 95-25.1; as well as a common

law claim for wrongful discharge in violation of North Carolina public policy. Following

defendant's removal of the action to this Court, plaintiff filed with leave of Court and consent of

defendant an amended complaint adding an additional claim for unpaid wages under the FLSA

and NCWHA.

Plaintiff was a long-time employee at defendant (FedEx), having begun his employment in October 1991 and working until his termination on April 28, 2014. When his employment was terminated, plaintiff was a Senior Aviation Line Maintenance Technician at FedEx's ramp facility at Raleigh-Durham International Airport. LaSasso Dep. at 18-19. Prior to his termination in 2014, plaintiff's yearly performance reviews reflected that FedEx was consistently satisfied with plaintiff's performance, save for the 2010 review. Langford Dep. at 136 -148. Plaintiff has had Type II diabetes since about 1994 and in 2014 continued to be affected by the disease. LaSasso Dep. at 38; Ryala Dep. at 14. Plaintiff's diabetes causes him to experience hypoglycemic events when his blood sugars are too low, the symptoms of which include irritability, shakiness, and dizziness. LaSasso Dep. at 37-8; Ryala Dep. at 28. To manage his diabetes, plaintiff takes medication and eats at regular intervals. LaSasso Dep. at 40; 188. Plaintiff informed his FedEx supervisors, his manager Joseph Fagan and his human resources advisor Peggy Langford, of his diabetes in the years preceding his termination. *Id.* at 43.

In early 2014, plaintiff was informed by a co-worker, Daniel Lester, that Fagan had retroactively reduced the overtime hours that Fagan and plaintiff had worked on their timecards. Plaintiff noticed that, for example, if he had worked four hours of overtime, his timecard reflected that he a worked an amount less than four hours. LaSasso Dep. at 89; Lester Dep. at 23. Plaintiff confronted Fagan about this practice, referred to as "chopping," noting that fractional reductions would add up to a lot of money over time. LaSasso Dep. at 119; Fagan Dep. at 133. Plaintiff recalls that Fagan told him he would be fired for challenging him on the overtime reporting. LaSasso Dep. at 119. Plaintiff made an anonymous complaint with FedEx's Alert Line regarding Fagan's overtime chopping. FedEx investigated plaintiff's complaint and discovered that Fagan was manually changing timecards and not following FedEx policy. [DE

45-35]; Castro Dep. at 90. Fagan received a warning letter, and later admitted that he had been under pressure to reduce overtime hours at the RDU facility. Fagan Dep. 28; 130.

Plaintiff contends that following his complaints about Fagan's overtime reductions, Fagan's attitude toward plaintiff changed, becoming hostile and negative. For example, Fagan referred to plaintiff in an email as "absolutely an idiot," Fagan Dep. at 92, and engaged in an email conversation which included plaintiff's co-workers in which Fagan was disrespectful to plaintiff. *See* Langford Dep. 180. The human resources manager, Peggy Langford, recommended that Fagan be counseled for this behavior as well as a determination that Fagan had treated plaintiff and Lester differently after both had engaged in similar conduct. *Id.*; [DE 45-26].

While plaintiff was employed by FedEx, FedEx used an incremental employee discipline system which was designed to notify employees of performance issues and give them an opportunity to improve. Documented counseling in the Online Documented Compliment/Counseling System (OLCC), as a first step, was not considered discipline. A performance reminder, usually accompanied by an action plan to correct a deficiency, was the first official step in the discipline system. If an employee received a second performance reminder within a twelve month period, the employee's manager may determine to couple that second performance reminder with a decision day. Generally warranted when an employee fails to improve performance after the first reminder, a decision day is a day of paid leave during which the employee may decide whether he wants to remain employed with FedEx. *See* Watson Dep. at 10-16; Langford Dep. at 24-27. Warning letters could be issued by a manager to address conduct concerns. Watson Dep. at 24. FedEx policy provided that receipt by an employee of either three performance reminders, three unsatisfactory performance reviews, or a combination

3

of three performance reminders and conduct letters within a twelve month period would be grounds for termination. Watson Dep. at 17.

Beginning in February 2014 and continuing to plaintiff's termination that April, plaintiff began receiving increasingly severe discipline from Fagan, culminating in two simultaneous but separate performance reminders issued on April 7, 2014.[1] Also on April 7, 2014, at approximately 4:00 p.m., human resources manager Langford met with plaintiff regarding his anonymous Alert Line complaint regarding Fagan's overtime adjustments as well as other complaints. Langford Decl. at 58-60. Following their meeting, Langford advised plaintiff that Fagan wished to speak with him. Fagan and plaintiff met at approximately 5:30 p.m., during which time Fagan issued the first performance reminder to plaintiff based on vehicle accidents. Plaintiff did not agree with the basis for the performance reminder but signed the paperwork indicating that he had received it. Fagan then delivered the second performance reminder, reading the document aloud and describing the decision day portion of the discipline. Plaintiff felt ambushed by the second performance reminder. Plaintiff had not eaten since approximately 12:30 p.m. and began to feel nauseated, hot, and lightheaded. As Fagan was describing the decision day process, plaintiff pushed back his chair and shouted "I can't take this anymore. I have diabetes." Plaintiff informed Fagan that Fagan stressed plaintiff out and was causing plaintiff's medical issues. Plaintiff told Fagan that he would report him to the Federal Aviation

---

[1] The first performance reminder related to the three documented counseling sessions which had taken place in February and early March and involved paperwork errors, plaintiff's unauthorized work after inclement weather, as well as plaintiff's incorrect installation of a flap actuator on an aircraft, for which plaintiff had not received documented counseling. The second performance reminder related to two vehicle accidents in which plaintiff was the driver. The first accident occurred on February 10, 2014, when plaintiff backed a tug into a lift truck and damaged the lift truck's front bumper. LaSasso Dep. 148; Fagan Decl. ¶ 11. The second accident occurred on March 3, 2014, when plaintiff hit a freight loader while driving a de-icing truck in hazardous conditions and without an audio communications system. LaSasso Dep. at 126; Fagan Decl. ¶ 11.

4

Administration (FAA) and Occupational Safety and Health Administration (OSHA). Plaintiff then slammed his portfolio on the desk and walked out of the conference room. LaSasso Dep. at 133-34; Fagan Dep. at 72; [DE 45-30]. In Fagan's documentation of the meeting, he recalled that plaintiff was screaming, struck his hand down on the table multiple times, and leaned over· aggressively at Fagan stating "bring it on" and "I am gonna get you!". [DE 45-30].

Once plaintiff left the conference room he proceeded down the hall to the office of Tom Maxwell, a senior manager. When plaintiff entered Maxwell's office Maxwell was on the phone; Maxwell, plaintiff, Langford, and Fagan were subsequently in the hall outside of Maxwell's office where plaintiff told Maxwell he thought Fagan and Langford were out to get him. An alarm on plaintiff's cell phone then went off, reminding plaintiff that he needed to eat. Plaintiff showed the alarm to Langford and Fagan. Fagan took plaintiff's identification card, suspended plaintiff with pay, and asked plaintiff to leave the facility. Plaintiff was escorted to his locker where he retrieved some personal belongings and left the building; shortly after leaving plaintiff returned to his desk to get his lunch, part of which he consumed in his car to allow him to be clear-headed enough to drive. LaSasso Dep. at 136, 145-46; Langston Dep. at 86; 96; Fagan Dep. at 73-4.

On April 10, 2014, a workplace violence report was completed regarding the April 7 events. Castro Decl. ¶ 6. Plaintiff's supervisors Fagan and Castro along with representatives from human resources then reviewed the April 7, 2014, incident and discussed plaintiff's future employment at FedEx. On Fagan's recommendation, plaintiff's employment was terminated. Langford Dep. at 123.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations, however, will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

At the outset, the Court notes that plaintiff does not contest the entry of summary judgment in defendant's favor on plaintiff's FLSA and NCWHA claims. Accordingly, defendant's motion as to those claims is GRANTED. Plaintiff does contest entry of summary judgment on his ADA/ADAAA claim and wrongful discharge in violation of North Carolina public policy claim.

6

I.    ADA/ADAAA

Plaintiff advances two theories of relief under the ADA and its amendments: wrongful discharge and failure to accommodate. Because plaintiff has not come forward with direct evidence of discrimination, he proceeds under the burden shifting analysis of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). This requires plaintiff to first establish a *prima facie* case, after which the burden shifts to FedEx to proffer a legitimate, non-discriminatory basis for the adverse employment action. If FedEx does so, the burden shifts back to plaintiff to establish that FedEx's proffered basis is mere pretext for discrimination. *Id.* at 802.

A plaintiff makes a *prima facie* showing of wrongful discharge in violation of the ADA by establishing that "(1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of discharge, he was performing his job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Haulbrook v. Michelin North America*, 252 F.3d 696, 702 (4th Cir. 2001). FedEx does not dispute that plaintiff was within the ADA's protected class or that he was discharged. A genuine issue of material fact exists as to whether plaintiff was performing his job at a level which met his employer's legitimate expectations and whether his discharge occurred under circumstances which give rise to a reasonable inference of unlawful discrimination.

First, plaintiff has proffered evidence that his supervisors, specifically Fagan, were aware that plaintiff had diabetes and that in the years preceding 2014 he had received positive performance reviews and had an overall positive record of performance. Specifically, on a seven point scale plaintiff had received ratings of seven in 2011, 2012, and 6.6 in 2013. Langford Dep.

at 136. It was only after plaintiff reported Fagan for chopping overtime on employees' timecards that plaintiff began to receive serial documented counseling sessions.[2]

Second, plaintiff has proffered sufficient evidence from which a reasonable jury could conclude that he was fired because of his diabetes and hypoglycemic episode. Plaintiff's evidence supports that Langford was aware of how someone experiencing a hypoglycemic episode might appear and Fagan has admitted that plaintiff was acting out of character on April 7, 2014. Langford Dep. at 51; Fagan Dep. at 82. Further, plaintiff has proffered evidence that an alarm reminding him to eat in order to keep his blood sugars up went off during this interaction and he showed the alarm to Langford and Fagan. Although plaintiff told Fagan and Langford that he could not take the stress and referenced his diabetes, plaintiff was escorted to his locker and asked to leave the building.

The foregoing further supports a reasonable conclusion that FedEx's proffered legitimate bases for terminating plaintiff, performance issues and the receipt of three performance and/or discipline warnings within twelve months, is mere pretext. Langford and Fagan's notes regarding the April 7 incident are inconsistent in terms of the severity and degree of plaintiff's outburst, and although a workplace violence report was completed Langford testified that she never felt threatened by plaintiff. Langford Dep. at 76. Accordingly, plaintiff's wrongful termination claim under the ADA and ADAAA may proceed.

A claim for failure to accommodate requires a plaintiff to show (1) that he is an individual with a disability within the meaning of the ADA, (2) that the employer had notice of the disability, (3) that with reasonable accommodation the employee could perform the essential

---

[2] Although the Alert Line was purportedly anonymous, plaintiff has proffered evidence that plaintiff's co-workers knew that it was plaintiff who had reported Fagan's activities, and it would not be unreasonable to conclude that Fagan was aware as well. [DE 45-29].

functions of the position, and (4) that the employer refused to make such an accommodation. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001).

FedEx argues first that plaintiff's failure to accommodate claim is beyond the scope of his EEOC charge and that the Court may not consider this claim. *See Evans v. Techs. Application & Svc. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit." Claims which have not been exhausted fall outside of the scope of the EEOC charge and are procedurally barred. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005).

Plaintiff's EEOC charge makes references both to his diabetes and his allegation that FedEx prevented him from properly treating his condition. While plaintiff may not have used the term accommodation in his charge, his claim that FedEx failed to reasonably accommodate his diabetes is both reasonably related to his complaint and would be developed by a reasonable investigation. "Documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 406 (2008). The Court thus finds that plaintiff exhausted his failure to accommodate claim and it need not be dismissed. *See also Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012) ("the exhaustion requirement should not become a tripwire for hapless plaintiffs. While it is important to stop clever parties from circumventing statutory commands, we may not erect insurmountable barriers to litigation out of overly technical concerns.").

9

Questions of fact remain as to whether FedEx denied plaintiff a reasonable accommodation. There is conflicting evidence in the record as to whether and when FedEx became aware of plaintiff's diabetes. Further, "implicit in the fourth element is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation," and there is a genuine dispute as to whether FedEx and plaintiff engaged in this process in good faith. *Haneke v. Mid-Atl. Capital Mgmt.*, 131 Fed. App'x 399, 400 (4th Cir. 2005) (citing 29 C.F.R. § 1630.2(*o*)(3)). Accordingly, the Court declines to enter summary judgment in FedEx's favor on plaintiff's failure to accommodate claim.

II. Wrongful discharge under North Carolina law

Plaintiff's final claim is for wrongful discharge in violation of the public policy of North Carolina. Plaintiff does not contest that he was an at-will employee, and under North Carolina law an at-will employee generally may not raise a wrongful termination claim. *Combs v. City Elec. Supply Co.*, 203 N.C. App. 75, 79 (2010). There is a public policy exception to this general rule, however, where an employer's termination is based on an unlawful reason. *Id.* In response to the summary judgment motion, plaintiff limits his theory of relief to a violation of North Carolina's Retaliatory Employment Discrimination Act (REDA), which provides that

no person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to . . . file a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action . . . with respect to

any of the statutory provisions provided, including the NCWHA. N.C. Gen. Stat. § 95-221(a). To establish his wrongful discharge in violation of public policy claim, plaintiff must demonstrate that (1) he engaged in protected activity, (2) his employer took adverse action, and (3) there is a causal connection between the protected activity and the adverse employment action. *Brewer v. Cabarrus Plastics, Inc.*, 130 N.C. App. 681, 690 (1998). While plaintiff

10

engaged FedEx's internal grievance system by making an Alert Line complaint regarding Fagan's alleged overtime chopping,

> REDA requires that employees pursue or threaten to pursue a "claim or complaint, [or] initiate [ ] ... [an] action" outside any internal grievance systems that their employer has developed. Complaining internally, such as an employee complaining to his supervisor or to human resources, does not suffice.

*Hadley v. Duke Energy Progress, Inc*, No. 5:14-CV-229-D, 2016 WL 1071098, at *7 (E.D.N.C. Mar. 17, 2016), *aff'd sub nom. Hadley v. Duke Energy Progress, LLC*, No. 16-1861, 2017 WL 496091 (4th Cir. Feb. 7, 2017). Plaintiff cannot demonstrate the first element of his REDA claim and summary judgment is therefore appropriate in FedEx's favor.[3]

## CONCLUSION

For the foregoing reasons, FedEx's motion for summary judgment [DE 39] is GRANTED IN PART and DENIED IN PART. Summary judgment is appropriate in favor of FedEx on plaintiff's FLSA, NCWHA, and REDA claims. Genuine issues of material fact preclude entry of summary judgment on plaintiff's ADA/ADAA claims. The clerk is DIRECTED to refer this matter to the appropriate United States Magistrate Judge for pretrial conference.

SO ORDERED, this **6** day of April, 2017.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

---

[3] Although plaintiff threatened to report Fagan to OSHA and the FAA during the April 7 meeting, plaintiff does not advance this threat as a basis for REDA liability and, in light of plaintiff's hypoglycemic state, the Court does not find this threat to have been made in good faith as would be required.